IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TGIP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:06-CV-105 |
| v. | § | |
| | § | |
| AT&T CORP, ET. AL., | § | JUDGE RON CLARK |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff TGIP ("TGIP") filed suit against Defendants AT&T Corp., Bell Atlantic Communications, Verizon Select Services, Inc., MCI Communication Services, Inc., Verizon Business Network Teleconnect Long Distance Services & Systems Company, IDT Corporation, U.S. South Communications, Inc. ("U.S. South"), Interactive Communications International, Inc. ("InComm"), Pre Holdings, Inc., and Pre Solutions, Inc. claiming infringement of United States Patent No. 5,511,114 ("the `114 patent") and United States Patent No. 5,721,768 ("the `768 patent"). Defendants U.S. South and InComm (collectively "Defendants") filed a Motion for Partial Summary Judgment of Non-Infringement [Doc. # 257].

The accused products at issue are Defendants' wireless top-up cards (which may be referred to as "wireless prepaid calling cards") and any account created for such cards. Defendants argue that their accused products do not infringe the patents at issue because they do not include access information (or a security number) that is input at a telephone to obtain access to a telephone network or system. TGIP maintains that even though a person cannot initially use

1

Defendants' accused products to obtain access to a telephone network, when a customer finally makes a call on a wireless phone from funds that were derived from Defendants' wireless top-up cards, that is sufficient to meet the claim limitations of the patents at issue. This attenuated relationship is insufficient. The patents' claims require a specific connection between the access information (or security number) and the calling card or calling card account.

There has been sufficient time for discovery.[1] There is no evidence that the security number associated with the accused cards are entered at a telephone to obtain access to the telephone network as disclosed by the `114 patent. With regard to the `768 patent, there is no evidence that the call processor uses the access information to identify the pre-paid calling card account and to establish a phone call. The court concludes that summary judgment for Defendants is proper on these issues.

## I. Patent Background and Technology

**The '114 patent**

The `114 patent relates to a prepaid calling card system having a remote terminal to provide on-site activation and re-charging of calling cards. The system includes four main functional components: a plurality of calling cards; a host computer; a plurality of on-site activation terminals; and a call processor. Each of the calling cards preferably includes a body portion and a read-only memory stripe with a stored security number. The main management and processing of the system is accomplished by the host computer, which is capable of connecting to the telephone network. The host computer includes a database for storing security numbers

---

[1] The court allowed TGIP until June 5, 2007 to respond to Defendant's motion. *See* Doc. # 266. TGIP has not indicated that any additional discovery is likely to lead to relevant information that would create a genuine issue of material fact.

associated with authorized calling cards. The data terminals are remote from the host computer and are capable of being connected for transmitting data between the terminals and the host computer. The call processor is controlled by the host computer for connecting one or more customers to the telephone network using the authorized calling cards.

**The ' 768 patent**

The `768 patent is a continuation in part of the `114 patent. Focusing on the ways in which it is different from the `114 patent, the `768 patent discusses an alternative embodiment not discussed in the `114 patent, whereby a user may activate or recharge a pre-paid card account with an authorized dollar amount at a user activation terminal. The pre-paid card account may then be used to purchase various goods and services up to the authorized dollar amount. The activation terminals are connected to a main processor, which includes a host computer responsible for management and processing of the system through a purchasing network. The host computer includes a database for storing security numbers associated with authorized card accounts and enables users to purchase goods and services up to authorized dollar amounts using the authorized pre-paid card accounts.

## II. Standard of Review for Summary Judgment

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an

element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335 (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468,

112 S. Ct. 2072, 2083 (1992).

### III. Analysis

Determination of infringement is "a two-step process in which we first determine the correct claim scope, and then compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1247-48 (Fed. Cir. 1998).[2] Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384 (1996). A determination of infringement is normally a question of fact. *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1300 (Fed. Cir. 2001).

To show infringement, a "plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cri. 2001). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "It is well established that a patent for a method or process is not infringed unless all steps or stages of the claims process are utilized." *Roberts Dairy Co. v. U.S.*, 530 F.2d 1342, 1354 (Ct. Cl. 1976).

Defendants argue that their accused products "do not include access information or a security code that is input at a telephone to 'obtain access to a telephone network or system.'" More specifically, Defendants argue that there is no evidence that the accused cards, or records

---

[2] The only issue in this motion is literal infringement – there is no indication or argument by TGIP that the doctrine of equivalents has been raised or is applicable.

associated with the cards, have a security number, code, or other type of access information that is input at a telephone which enables the consumer to then obtain access to a telephone network or system.

TGIP argues that the addition of money "to the wireless pre-paid calling card account, in connection with the customer's use of the wireless pre-paid calling card, allows the customer access to the carrier's wireless telephone network."

**A. Infringement of the ` 114 Patent**

TGIP has accused Claims 1-7 in the ` 114 patent. Claims 1, 6, and 7 are the independent claims. This court recently granted Defendants' Motion for Summary Judgment with regard to Claim 7 of the ` 114 patent. *See* Doc. # 278. The court, therefore, does not discuss this claim here.

The term "calling card" is a limitation used in each of the independent claims in the ` 114 patent. For example, Claim 1 from the ` 114 patent states in part:

> A pre-paid calling card system to enable customers to purchase calling cards at predetermined locations and to use such calling cards to access a telephone network having at least one telephone, comprising:
>
> a plurality of calling cards, each of said calling cards having a security number associated therewith that must be entered at a telephone to obtain access to the telephone network . . . .

The court construed the term "calling card" in the Claim Construction Order [Doc. # 238] as follows:

> **"Calling card"** means "a card, which may be made of various materials and in various shapes, which has associated with it a combination of numerals, letters, and/or characters (sometimes called a security number or code) that can be entered at a telephone to obtain

6

access to the telephone network or system."

As discussed in the Claim Construction Order, the invention is always described as requiring the user to enter a security code, and then, if there is a balance, the call will be connected to the number the user desired to call. *See* ` 114 patent, col. 2, ll. 29-48; col. 5, ll. 19-40; *see also* ` 114 patent, col. 6, ll. 6-9 ("a plurality of calling cards, each of said calling cards having a security number associated therewith that must be entered at a telephone to obtain access to the telephone network."). Moreover, in TGIP's claim construction brief, TGIP stated that all of the claims require that "they [calling cards] be used to access a telephone network." TGIP Claim Const. Br., p. 24 [Doc.# 200, p. 28 of 37].

Defendants' products are described by both parties as working in the following manner:

(1) A user purchases one of Defendants' cards from a predetermined location;

(2) The user transfers the value associated with the card to a preexisting prepaid wireless account[3] by calling a dedicated 800 number;

(3) The call is answered by an interactive voice response system (IVR) and, through a series of prompts, the user enters his preexisting wireless account number, and then enters a security number (i.e. a PIN number) associated with the card;

(4) The amount of money on the card is then transferred to the customer's wireless account; and

(5) The call is terminated, without connecting the consumer to a telephone network or system.

---

[3]This term is discussed below.

This sequence reveals two key aspects which differentiate Defendants' cards from the cards described in the `114 patent:

(1) The wireless card and PIN are no longer useful and may be discarded after the transfer occurs. While the cards described in the `114 patent may be discarded, this can only be done if the security number is memorized, or written down, because the security number must be used for each call; and

(2) To place such a call the user must use his wireless telephone in a separate instance and no additional information (like a PIN number or any information from the card ) is used to make this second call. The initial call to transfer funds is not a call from the consumer to someone to whom the consumer wishes to speak.

TGIP argues that because a person purchases a pre-paid calling card with an eye towards transferring those minutes onto the customer's separate wireless account, and the person later does in fact transfer the money, that the wireless card is used to obtain access to a telephone network when that person finally makes a phone call. It is this correlation between Defendants' cards and the ultimate phone call, which TGIP alleges satisfies the claim limitation at issue.

The flaw in TGIP's position is that there is no basis in the claim language, specification, or prosecution history to expand the claim to include this type of scenario. The claim language states "a security number associated therewith that *must* be entered at a telephone to obtain access to the telephone network. . . . ." `114 patent, col. 6, ll. 7-8; `114 patent, col. 6, ll. 61-62 (emphasis added). Moreover, the only embodiments disclosed in the specification require the entering of the security number each time a call is made. *See* `114 patent, col. 5, ll. 19-40. The patentee also stated that: "Claim 1 now describes that the calling card has a security number

8

associated therewith that must be entered 'at the telephone' to obtain access to the telephone network." Amendment to First Office Action, 5/18/1995, p. 8 (Bates No. TGIP 006428), Ex. 7 to Defendants' Responsive Claim Const. Brief [Doc. # 207, Attachment # 7, p. 9 of 11].

TGIP's proposal reads out the association between the calling card, the security number, and the making of a phone call by rendering the security number superfluous after an initial transfer of funds. The security number is not entered when the customer actually makes a call using the telephone network. TGIP does not cite to any portion of the claim language or specification in support of its position.

The court concludes that TGIP has failed to show that there is a genuine issue of material fact as to whether the independent Claims 1 and 6 of the '114 patent are infringed by Defendants' wireless pre-paid calling cards.[4]

**B. Infringement of the '768 Patent**

While the patent and the prosecution history strongly suggest that the system involves the distribution of physical cards of some type, and certain claims actually use that term, the '768 patent claims focus on "prepaid calling card accounts." This is an important distinction between the '114 patent and the `768 patent. The '114 patent claims do not contain the word "accounts" and are limited to actual "calling cards."

TGIP accuses Claims 1-3, and 5-11 in the '768 patent. The independent Claims are 1, 3, 5, 7, 9 and 11. The term "prepaid calling card account" is a limitation used in every claim in the `768 patent. For example, Claim 1 from the `768 patent states in part:

---

[4]Because there is no evidence that the independent claims are infringed, it follows that there is no evidence that the dependent Claims 2, 3, 4 and 5 are infringed. *See Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199 (Fed. Cir. 1994).

> A method to enable customers to obtain pre-paid calling card accounts from a plurality of point-of-sale locations and to use the pre-paid calling card accounts to access a telephone network using a telephone, the method comprising: . . .
>
> receiving access information transferred from a telephone to a call processor having access to the database of pre-paid calling card accounts, the call processor using the access information to identify the particular pre-paid calling card account and to establish a telephone call from the telephone to a desired number using the telephone network . . .[5]

This court construed the term "pre-paid calling card account" in the Claim Construction Order [Doc. # 238] as follows:

> **"Pre-paid calling card account"** is "a record maintained in a data base which, when activated, allows a user with the access information for that account to obtain access to a phone system or network."

The court also construed the term "access information" in the Claim Construction Order [Doc. # 238] as follows:

> **"Access information"** is "a combination of numerals, letters, and/or characters that can be transmitted from a phone to a call processor, which identifies one, and only one pre-paid calling card account."

---

[5] Claims 1, 3, 5, and 11 all contain this exact same wording. Claim 7 has a slightly different version of this limitation: "means for receiving access information transferred from a telephone and for identifying the particular pre-paid calling card account using the access information." Claim 9 requires "receiving access information associated with the particular pre-paid calling card from a standard telephone at a call processor having access to the database of pre-paid calling card accounts. . . establishing a telephone call from the standard telephone to a desired telephone . . . ." Regardless of these slight differences, these limitations all require that the pre-paid calling card account be identified by, or associated with, the access information.

As discussed in the Claim Construction Order, the patentee represented to the Patent Examiner that the "'call processor' clause has been modified to reflect that the element is responsive to the entry of a security number (not the card itself as in Shilling) for enabling the customer to access the telephone network using a telephone (and not the dedicated device of Shilling)." Amendment to First Office Action, 5/18/1995, p. 9 (Bates No. TGIP 006428), Ex. 7 to Defendants' Responsive Claim Construction Brief [Doc. # 207, Attachment # 7, p. 10 of 11]. The patent itself also strongly emphasizes the connection between the pre-paid calling card account and the access information. *See* '768 patent, col. 2, ll. 36-38; '768 patent, col. 2 ll. 51-52; ' 768 patent, col. 2, l. 62- col.3, l. 1.

Defendants moved for partial summary judgment on wireless prepaid calling cards and any account created for such a card. There are two issues raised by Defendants' motion: (1) whether there is evidence that the alleged accounts provide a user with access to a phone system or network, and (2) whether there is evidence that the access information is received by the call processor and then used by the call processor to identify the pre-paid calling card account and to establish a phone call.

When a customer uses Defendants' accused products, the access information is only given one time; when the desired amount is transferred into the pre-paid account.[6] In that instance the call processor (the IVR) cannot establish a telephone call to a desired number. It is only when the access information is no longer being used, i.e. after the amount is transferred into the account, that a phone call may be established. Moreover, there is no evidence that, after the

---

[6] The court assumes, as TGIP does, that when a person buys a handset with pre-paid minutes and creates an account with a service provider that can be recharged with Defendants' wireless top-up cards, this is an account created for such calling cards.

initial transfer, the wireless account is identified by, or associated with, the access information. In other words, a user does not have to have the access information in order to obtain access to a phone system or network.

TGIP does not dispute these points. Rather, as noted above, TGIP argues that when a person finally uses the wireless phone to make a call, this is evidence that the accused product is used to obtain access to a network. While it may be true that a wireless pre-paid account is used to obtain access to a network, this does not resolve the issue. This ignores a key limitation in the claims, namely the relationship between the access information, the call processor, and the prepaid account. The account must be identified by, or associated with, the access information. In Defendants' products, there is nothing to suggest that once the funds are transferred, there is any connection between the access information and the wireless calling card account. Based on the claim language, this is a connection that must exist anytime a call is made. *See, e.g.,* `768 patent Reexam Cert., col. 1, ll. 49-52("the call processor using the access information to identify the prepaid calling card account *and* to establish a telephone call . . .")(emphasis added).

The only portion of the patent cited by TGIP refers to recharging a pre-paid calling card account. *See* '768 patent Reexam Cert, col. 2, ll. 29-56 (Claim 3). This, however, wholly ignores that at trial TGIP must show that each claim limitation is met. The challenge is to a separate limitation, namely whether the call processor uses the access information to identify the pre-paid calling card account and to establish a phone call. *See* '768 patent Reexam Cert., col. 2, ll. 41-45 (Claim 3). There is no evidence that this claim limitation is met.

TGIP suggests that because the court did not adopt Defendants' claim construction position, there is not a *per se* rule eliminating wireless products. TGIP is correct that there is no

*per se* limitation, however, this does not change the fact that there must be some evidence that the accused products meet the limitations of the claim. What TGIP argues for is actually a *per se* inclusion of wireless products, which is not warranted based on the record before the court.

The court concludes that TGIP has failed to show that there is a genuine issue of material fact as to whether the independent claims of the '768 patent are infringed by any accounts created for wireless pre-paid calling cards.[7]

### V. Conclusion

The independent claims of the '114 patent describe a relationship between the security number and the calling card. Likewise, the claims of the '768 patent teach a connection between the access information and the calling card account. After ample time for discovery, no evidence has been presented that would support a finding that the accused cards infringe upon these limitations.

IT IS THEREFORE ORDERED that Defendants' U.S. South and InComm Motion for Partial Summary Judgment of Non-Infringement [**Doc. # 257**] is **GRANTED**. Defendants' U.S. South and InComm wireless top-up cards, including InComm's T-Mobile and Cingular wireless top-up cards, do not infringe the '114 patent or the '768 patent.

So **ORDERED** and **SIGNED** this **10** day of **July, 2007.**

_____
Ron Clark, United States District Judge

---

[7] Claims 2, 6, 8, and 10, the remaining claims alleged to be infringed in the '768 patent, are all dependent claims. Because there is no evidence that the independent claims are infringed, it follows that there is no evidence that the dependent claims are infringed. *See Wolverine World Wide, Inc.,* 38 F.3d at 1199.